42045
AMOUNT $ 150.00
SUMMONS ISSUED yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY CLK SES
DATE 9/23/02

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Friedrich Lu, Plaintiff )  Civil Action No. 2002-
v. )
Massachusetts Institute of Technology, Willard J. ) 
Boulter, III, and Orlando Tirella, and C.S.U. Task ) **02-11860 RCL**
Force, Defendants )

## VERIFIED COMPLAINT

(1) The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3).

(2) All police officers of Massachusetts Institute of Technology (MIT) are deputized by Cambridge Police Department (CPD) and, within the perimeter of MIT campus, full-fledged law enforcement officers in their own right. MIT hires, fires, pays, promotes, and disciplines its own officers, as well as formulates, revises, and enforces its own policing policy. CPD does not second guess MIT's arrest, but provides only logistical support secondary to an arrest, such as transportation of an arrestee to and from CPD police station and a holding cell pending arraignment.

(3) John F. Nash, Jr. was in MIT faculty when schizophrenia struck. He returned, a broken man, to his alma mater and haunted, literally, the Princeton campus for decades--before awarded Nobel Prize in Economy in 1994. See the dramatized movie "A Beautiful Mind" (2001). The intolerant atmosphere of MIT, with its obsession to sterilize its milieu, can never nurture a legend of this magnitude. It is a pity, for a great institute like MIT.

(4) MIT has a policy, or "custom or usage," to detain, arrest and imprison, as well as illegally search, anybody who happens to cross path with MIT police and who is not a holder of a current MIT ID. Examples are: a hapless person who was in fact on a public street in between MIT's buildings; a former MIT employee; a visitor; an current employee of a concession on MIT; a witness reporting a crime; an individual exercising common-law right to make a shortcut in the open land of MIT on the way to a destination, and more. In short, MIT utterly disregards the phrase "without right"--which enshrines common-law rights--embedded in the state trespass law, Mass. Gen. L. c. 266, § 120. Further, MIT connives and condones its own police officers to file false criminal charges and false police reports.

FILED
IN CLERK'S OFFICE
2002 SEP 23
U.S. DISTRICT COURT



1

Other unconstitutional custom or usage at MIT (and its law enforcement) encompass detention (which is not necessarily equivalent to arrest) without probable cause; unreasonable search before or even without an arrest; dispensing with a telephone call "within one hour" of detention, Gen. L. c.276, 33A; and custodial police interrogation in violation of *Miranda* rights: either absent prior *Miranda* warnings *plus* a state-dictated phone call, or notwithstanding invocation of *Miranda* rights.

(5) Alternately, the civil rights violation arises from inadequacy of police training by MIT where the failure to train amounts to deliberate indifference to the constitutional rights of persons with whom its police come into contact.

(1) The 44 U.S.C. § 1911 assures public access to a depository library at MIT.

(2) On Friday, August 9 (all dates hereafter were in the year of 2002), around 6:40 p.m., no sooner had plaintiff Friedrich Lu walked into the MIT building which houses the main library of MIT than a man in a white T-shirt stopped Lu and ripped away Lu's jacket (that Lu was wearing), a back pack (on his back) and a plastic bag (in his hand). While doing so, White Shirt indicated that he was an MIT officer, reached his pant pocket as if to produce a badge but did not. White Shirt asked if Lu had an MIT ID. Replying that he did not, Lu produced from his hip pocket some cards and demonstrated a card with his name on it. White Shirt took away all of them--who would later keep some, despite a written request from Lu (see below).

(3) Then, another man in a black T-shirt rushed in, took over the jacket from White Shirt, squatted while unzipping a pocket of the jacket, and began rummaging. Neither was in uniform or displayed a badge.[1] Thereafter arrived a few MIT police officers in uniform.

Lu: "You can not search my pocket * * *"

Black Shirt: "Shut up!"

Lu: "* * * unless I am under arrest. Prior to that, you can only do *Terry* pat [at most]."

---

[1] In part because MIT police is not known to have a plainclothes division and in part because these two wore crew cut--unseen before among MIT officers--Lu had grave doubt about their identities until his arraignment on Monday, Aug. 12, when Cambridge District Court supplied Lu with a police report, see *infra* n. 2, that identified the two for the first time.

Black Shirt looked up from the loot and asked White Shirt, "Is he under arrest?" White Shirt answered yes who proceeded to cuff Lu, without providing charges or *Miranda* warnings. Lu turned to Black Shirt, "You can search now," In quick succession, White Shirt, amid communication through a radio with MIT police headquarters, commented, "We have been watching you for 1 1/2 month." And Lu invoked the right to remain silent and turned down several questions from White Shirt, one of which was for Lu's address. White Shirt threatened, "State law requires an arrestee to disclose his address. If you don't, I will file an additional charge against you." Under duress, Lu relented, "I am homeless." White Shirt pressed further for shelter address; Lu again responded that he was homeless.

(9) In the midst of searching the contents of that pocket, Black Shirt inquired Lu about the contents of one container--an ordinary plastic, child-proof, prescription jar, with a label on the outside indicating Boston Medical Center as well as Lu's name, and containing a dozen capsules or so with "allegra" and "60 mg" clearly printed on each. Lu reiterated his desire to be silent. Black Shirt retaliated by saying, "If you don't say, I will charge you with possession of controlled substance C, 93C, er, controlled substance D." It is apparent that Black Shirt just picked the charge from thin air, with no basis whatever for C or D charges.[2]

(10) After Black Shirt finished search with the jacket, he asked Lu if there was any needle on him or clothing. Lu again proclaimed his intention to remain silent. Black Shirt said he asked the question so that he would not be stuck by a needle. Lu repeated his proclamation. Black Shirt then patted Lu's pants.

---

[2] In the Arrest/Incident Report ("Police Report") which these two MIT officers filed with CPD a few hours after the arrest, they inexplicably settled for "two containers of unauthorized narcotics"--not one container but two; not just "controlled substances" but "narcotics."

Other flat falsehoods in the police report are:
(a) Lu "was seen looking around the Loading Dock Area of Senior House Dorm." *Id.*, at para. 1.
(b) "A routine check showed that Mr. Fredrick [sic] Lu had been [sic] trespassed before at MIT." *Id.*, at para. 4
(c) "Mr. Lu would not provide his address * * *" Appendix to Police Report faxed by MIT officer Boulter on Aug. 12 to CPD before Lu's departure from there (CPD) to state court to be arraigned. (The Appendix also repeated charges of trespassing and possession of "narcotics."

(11)   MIT police did not notify Lu of charges against him, as it must. Thus Lu inquired Black Shirt on the charges, who jeered, "You say you want to remain silent. So you should remain silent." Lu posed the same question to White Shirt, who reply was "trespass and possession of control substance." Lu pressed, "Do you want to give me the details now? Or do you want to wait until I file a motion for Bill of Particulars?" In that White Shirt demonstrated an facial expression indicating inability of comprehending "Bill of Particulars," Lu paraphrased the question by asking, "Why am I charged with trespass?"

White Shirt said simply: "You are in an MIT building."

Lu inquired if there was more to it, and White Shirt answered in the negative. Realizing their fallacies, Lu implored officers to re-examine their legal stance. "You are acting under color of the state law. You can not say the arrest is a mistake. You are violating my civil rights." Lu continued, "I have a defense. There are exceptions to the state [trespass] law. I have a right to be here."

Lu emphasized that the MIT library was a Congress-designated Federal Repository. Alerting the officers to a sign to that effect which was affixed to the door of the library a few yards away, Lu suggested them to read the sign themselves. Lu intoned that at least due to this mandate, "MIT can not, and does not, limit access to the library to a holder of current MIT ID."

The officers would not listen.

(12)   Lu continued, "As to the possession of a control substance, it was ridiculous. That is my medicine." The officers were unmoved.

(13)   Lu finally averred, "With regard to trespass charge, you must give prior warnings, where are they?"

White Shirt:   "I gave you the warning one month ago."

Lu was stunned by the bald-faced lie. White Shirt must have noticed the disbelief, for the officer immediately switched his ground, "Anyway, there is no need for prior warnings."

Merely as a courtesy, CPD provided a paddy wagon to transport Lu from MIT to CPD station. "Next time we'll buy a wagon and transport [an arrestee] ourselves," an MIT officer quipped to the wagon driver, CPD officer Greenidge. While getting on the

wagon, Lu admonished them to safeguard his properties, who promised they would. At the CPD station, Lu was handcuffed to a bench for more than two hours before MIT police formally handed Lu over to CPD for booking. It might turn out that MIT police, which at any rate did not grant Lu the right to use a telephone, was preparing a police report in the interval.

(14)   Here is what transpired at a CPD room where Lu was benched.

Needing witnesses, Lu mentioned defenses to both charges to CPD Officers Greenidge, "Zialo," "Mallard," and a female officer--all (except "Zialo") in front of White Shirt, who did not comment.

At a late point, only White Shirt, Black Shirt and Lu were in the room, Black Shirt ambled toward, and stopped a foot away from, White Shirt (who was leaning against a wall two yards from Lu) and asked White Shirt, "Do you know any lawyer?" White Shirt shook his head no. Then Black shirt turned to Lu, leaned against the wall, smiled and said, "We might need one. We might be sued." Suggesting a way out for all concerned, Lu proposed, "Why don't you release me now?" At that, Black Shirt gave Lu a toothy look, and simultaneously made a long "ts" sound from between his teeth, to show contempt for Lu's idea.

The CPD female officer reentered the room, and had a short, final banter with both MIT officers, ending with the question for Black Shirt, "What is your next career move?" Black Shirt: "State Police." Lu shook his head, and related the previous conversation to the female officer, and said, "They asked each other for a lawyer because they said they might be sued. They know that are mistaken. Still, They arrested me and now put me to a holding cell for three nights [Friday evening to Monday morning]. It is a Greek Tragedy." The two MIT officers neither confirmed nor denied Lu's statements. A few minutes later, Lu repeated the dialogue to a CPD officer in charge of booking. To whom Lu further provided his name and his address ("homeless"), stating that he would have elected to remain silent on address, too, "but now that MIT police forced me to disclose my address, I might as well tell you that."

(15)   Not only did the individual defendants fail to read *Miranda* warnings upon Lu's arrest, but when Lu exercised these *Miranda* rights, they compelled Lu to incriminate himself by extracting Lu's address (or lack thereof) for identity search in databases;

5

penalized Lu with false possession charges culminating in the filing of a false police report; and attempted to wring from Lu declarations against penal interest (viz., possession of needles).

(16) In the following Monday, Aug. 12, Lu was arraigned and released on personal recognizance. *Massachusetts* v. *Lu*, Cambridge Dist. Ct. Criminal No. 0252CR002635. See also *sufra* n. 1. An hour later Lu arrived at MIT's police department to claim properties (to no avail)--CPD had just returned Lu some but MIT still withheld a bagful besides his ID's (which were nothing but cards with Lu's name on them). The MIT police officer at the reception desk reminded Lu, "This is the only place at MIT that you can go, you know." To which Lu replied, "No, there is no restriction [placed by the state court]. But I will not come [pending application for an injunction]; I am suing MIT anyway."

(17) The next day, Aug. 13, Lu hand delivered to MIT's police department his aforesaid claims, this time in writing, vowing a lawsuit if they were not returned in two weeks. Same day, he also filed with the state court a motion to return the same as well as, *inter alia*, a motion to dismiss as a matter of law.

(18) In parallel, on Aug. 15 Lu humbly requested that MIT demonstrate self restraint and guarantee safe passage en route to its library and leave library users unmolested. No reply, either. In conclusion, MIT is inexorable.

(19) September 9. At a routine hearing, First Judge Roanne Sragrow of Cambridge Dist. Ct. glanced at charges against Lu and, calling the charges "serious," advised him to accept a court-appointed lawyer at the expense of Commonwealth--as Lu, being indigent, was eligible. Lu reiterated his intention to represent himself. The judge read police report (but nothing else, such as Lu's motions), and again urged Lu to accept one. Lu cited Sixth Amendment to insist on self representation.

(20) Corruption of judicial process permeated every step along the way, from top to bottom--at MIT, at the courthouse.

Sept. 20. Outmaneuvered and outgunned (by Lu, of course), a prosecuting attorney entered a *nolle prosequi* on the two counts of possession of narcotics. Lu was convicted in a bench trial of trespass (*to be continued*).

(21) Lu is among the few, if not the only, whom MIT has turned away from, or arrested for access to, its depository library.

(22) In this respect at least, MIT has never acted like an educational institute, and can expect (or deserve) no such treatment in return. All gloves are off.

(23) Count One: 42 U.S.C. § 1983 (Federal Civil Rights Statute)

Under color of state statute, ordinance, regulation, custom, or usage, all defendants have subjected Lu, or caused him to be subjected, the deprivation of rights, privileges, or immunities secured by the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution as well as federal law. Individual defendants (as opposed to organizations) are sued in both official (meaning MIT, not CPD) and personal capacities.

(24) The following causes of action are based on Massachusetts state law. For the purpose of state law, defendants Boulter and Tirella are agents, servants or employees of MIT and/or "C.S.U. Task Force," though relationship of the two organizations is not clear at present.

(25) Count Two: Gen. L. c. 12, § 11I (State Civil Rights Statute)

For extracting address and inducing disclosure of prescription--despite Lu's repeated assertions of *Miranda* rights--plus menacing Lu with certainty of re-arrest should he visit a MIT library once more, all defendants by threats, intimidation or coercion, interfered with, or attempted to interfere with Lu's exercise or enjoyment of rights secured by the constitution or laws of the United States.

(26) Count Three: False Imprisonment

All defendants caused the intentional and unjustified confinement of Lu, directly or indirectly of which Lu was conscious.

(27) Count Four: Abuse of Process

By charging Lu with two counts of possession of control substances Class C as way to retaliate Lu's invoking the established right to remain silent, all defendants were making malicious use of legal process to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.

(28) Count Five: Malicious Prosecution

With malice and without probable cause, all defendants instituted three-count criminal process against Lu, the termination of which was in favor of Lu.

(29)  Count Six: Conversion

All defendants intentionally and wrongfully exercised acts of ownership, control or dominion over Lu's personal property, "papers, and effects" to which they had not right of possession.

(30)  Count Seven: Negligence

MIT and C.S.U. Task Force were and are derelict in training its police force.

(31)  Jury trial is demanded to assess liability and damage, including punitive damage. At the same time, predicated on Counts One and Two, Lu calls for equity relief, to wit, freedom from unreasonable search and seizure at MIT premises.

Plaintiff:   Friedrich Lu, pro se (under penalties of perjury)
Signed:      /s/ Lu
Date:        September 13, 2002
Address:     c/o St. Francis House, PO Box 499, Lafayette Station, Boston, MA 02112

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Friedrich Lu

**DEFENDANTS**
Massachusetts Institute of Technology (MIT)
Willard J. Boulter, III.
Orlando Tirella,
C. S. U. Task Force

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  homeless but usually in Suffolk County
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
pro se
c/o St. Francis House, P O Box 499, Lafayette Station, Boston, MA 02112
No phone number for being homeless

ATTORNEYS (IF KNOWN)
unknown

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | **LABOR** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | ☐ 380 Other Personal Property Damage | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **PERSONAL INJURY** | ☐ 385 Property Damage Product Liability | **SOCIAL SECURITY** | ☐ 894 Energy Allocation Act |
| | ☐ 362 Personal Injury — Med. Malpractice | | ☐ 861 HIA (1395ff) | ☐ 895 Freedom of Information Act |
| | ☐ 365 Personal Injury — Product Liability | | ☐ 862 Black Lung (923) | |
| | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 863 DIWC/DIWW (405(g)) | |
| | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 864 SSID Title XVI | |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42 USC § 1983

MIT police arrested Friedrich Lu and filed false charges on August 9, 2002. Nolle prosequi entered on narcotics charges.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ blank    CHECK YES only if demanded in complaint: JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions): None    JUDGE _____    DOCKET NUMBER _____

DATE September 2, 2002

SIGNATURE OF ATTORNEY OF RECORD    /s/ Lu, pro se

FOR OFFICE USE ONLY

RECEIPT # ___ AMOUNT ___ APPLYING IFP ___ JUDGE ___ MAG. JUDGE ___

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) _Friedrich Lu v. Massachusetts Institute of Technology (MIT) et al_

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

    ___  I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    _X_  II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

    ___  III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

    ___  IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

    ___  V.   150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.
_None_

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
                                                              YES          (NO)

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)
                                                              YES          (NO)
   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                              YES           NO

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?
                                                              YES          (NO)

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
                                                              (YES)         NO

    A.  IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?
        (EASTERN DIVISION)        CENTRAL DIVISION          WESTERN DIVISION

    B.  IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?
        EASTERN DIVISION          CENTRAL DIVISION          WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _Friedrich Lu, pro se_
ADDRESS _c/o St. Francis House, P O Box 499, Lafayette Station, Boston, MA 02112_
TELEPHONE NO. _Not available for being homeless_

(Cover sheet local.wpd - 11/27/00)